# CHARLESTON

## WILLS *v.* FOLTZ.

Submitted September 10, 1906.    Decided February 5, 1907.

1. WILLS—*Construction—Nature of Estate.*

    A devise to three daughters named "and their children," the daughters having children at the date of testator's death, confers upon the daughters and their children a joint estate in equal portions, and does not vest a fee in the daughters alone. (p. 263.)

2. SAME—"*Children.*"

　　The word "children" in a devise is a word of purchase, not of limitation, unless different intent plainly appear in the will. (p. 263.)

3. SAME.

　　In construing a will the inquiry is not what the testator may have intended to express, but what do the words used express. (p. 263.)

4. SAME.

　　Where a will gives to a person named and his children, the point' of time for inquiry as to when the children are living in order to · determine whether the person shall take a fee or all take a joint. estate, is the date of the testator's death. (p. 266.)

5. SAME—*Joint Estate.*

　　Under a devise to three named daughters "and their children,"the children living at testator's death, daughters and children take a joint estate, and share *per capita,* and the children do not take *per stirpes,* though one of the daughters have more children than others. (p. 266.)

Appeal from Circuit Court, Hampshire County.

Bill by M. F. Wills against Reuben Foltz and others. Decree for plaintiff, and Lillian M. Grapes and John R. Grapes appeal.

*Affirmed.*

R. W. MONROE, for appellants.

JOHN J. CORNWELL, for appellee.

BRANNON, JUDGE:

Benjamin Foltz left a short will reading as follows:

"Hampshire Co. W. Va. This is my last will' and *testment,* I give to M. F. Wills a support as long as she remains, single and the balance of my property I give to L. M. Grapes,. S. A. Wills & Minnie V. Wills and their children after all my just debts are paid. Given under my hand this 1st day of June, 1892."

Foltz never married, but for some 36 years a woman, M. F. Wills, lived in his house with him and by him had three children, Lillie, Sallie and Minnie Wills, they taking the name of their mother. Foltz recognized them as his natural children. Lillie married Grapes, and had three children; Sal-

lie married Power and had five children, and Minnie married
Wolf and has five children. One of Minnie's children was
born after the death of Foltz. Except this child all the
daughters' children had been then born. Sallie and Minnie
Wills were not married at the date of the will, but were at
their father's death. Lillie had two children at the date. of
the will. In a suit in Hampshire county for the purpose,
among others, of construing this will, it was decided that the
three daughters and their children took a joint estate in fee
*per capita*, and Lillie Grapes appeals.

Mrs. Grapes contends that under the will she takes a fee,
and at any rate, that the children of Foltz's three daughters
take *per stirpes*, not *per capita*. This short will is couched
in plain language presenting little difficulty, it would be
thought, and yet one who examines the matter will find it one
of difficulty under the numerous authorities, more or less
bearing upon it. Judge Story in *Sisson* v. *Seabury*, 1 Sum-
ner 235, did not overstate when he said: "The difficulty of
construing wills in any satisfactory manner, renders this one
of the most perplexing branches of the law. The cases almost
overwhelm us at every step of our progress; and any attempt
even to classify them, much less to harmonize them, is full
of the most perilous labor. Lord Eldon has observed, that
the mind is overpowered by their multitudes, and the subtility
of the distinctions between them. To lay down any positive
and definite rules of universal application in the interpreta-.
tion of wills, must continue to be, as it has been, a task, if
not utterly hopeless, at least of extraordinary difficulty. The
unavoidable imperfections of human language, the obscure
and often inconsistent expressions of intention, and the utter
inability of the human mind to foresee the possible combina-
tion of events must forever afford an ample field for doubt
and discussion, so long as testators are at liberty to frame
their wills in their own way, without being tied down to any
technical or formal language. It ought not, therefore, to sur-
prise us, that in this branch of the law the words used
should present *an infinite* variety of combinations, and thus
involve an infinite variety of shades of meaning, as well as of
decision." What estate do the three daughters take under
the will? Do they take fees simple? Counsel for Mrs.
Grapes relics on *Wild's Case* to support her claim to a fee.

Of *Wild's Case*, 2 Jarman 1235, says: "The rule of construction commonly referred to as the doctrine of *Wild's Case*, is this, that where lands are devised to a person *and his children, and he has no child at the time of the devise*, the parents take an estate tail; for it is said, 'the intent of the devisor is manifest and certain that the children (or issues) should take, and as immediate devisees they cannot take, because they are not in *rerum natura*, and by way of remainder thay cannot take, for that was not his (the devisor's intent, for the gift is immediate; therefore such words shall be taken as words of limitation.'" Thus by that cause where there are no children in being at the date of the devise, it is fee tail, but now a fee simple by the act converting estates tail in fee simples. Code, chapter 71, section 9. But as one of the daughters had children at the date of the will, and all at the death of testator, how can the daughters take estate tail under the rule above stated in *Wild's Case?* As in *Wild's Case* Wild had children at the date of the devise, it seems that the above statement from *Wild's Case* is *obiter*, it not being a case where the devisee had no child at the date of devise, though as to create an estate tail there must be no child to take at the date of the devise, under the statement of *Wild's Case*, it conversely follows that if at that date there is a child living, the rule does not apply, and there is no estate tail. I understand the rule above stated in Jarman to have been held in *Doe* v. *Anderson*, 4 Leigh 118, a devise to a daughter and her children, she having no children at the date of the devise, as Judge Carr states, and it was held an estate tail converted into fee simple. *Wild's Case* was cited for the reason. The above rule, propounded in *Wild's* Case in 1589, is regarded a sound law. English cases approve it. See 3 Lomax Digest, side p. 203 and citations. Opinion in *Martin* v. *Martin*, 52 W. Va. 389; 2 Miner's Inst. 953. "An old and well recognized rule." Page on Wills, section 567; Schouler on Wills, section 555. *Wild's Case* was reconsidered by the House of Lords in 1880, and adhered to, with the declaration: "It is not now to be departed from." *Clifford* v. *Koe*, 5 App. Cases, 447. In *Silliman* v. *Whitaker*, 119 N. C. 89, it is said it had been the law 300 years. Many American cases approve it, a few disapprove it. Dev-

lin on Deeds, section 860, cites many cases for the position that "A conveyance to a woman and her children makes them joint tenants or tenants in common" Freeman, Coten. & Partition, section 26. If a deed to two persons carries a joint estate, why does the mention of children change it? A Kentucky case denies the application of the rule of *Wild's Case* to a wife and children, but said it would apply to a devise to the testator's child and his children. 63 Am. D. 548. This will would, even by that case, confer a joint estate. Judge Story in the case cited from 1 Sumner 242 said that *Wild's Case* "had been constantly admitted to be good law." But though in *Wild's Case* there was not involved a case where at the date of the devise no child of the devise existed, and therefore the above statement was not actual decision, there was involved and decided the very point involved in this case. The devise was to "Rowland Wild and wife, and after their decease to their children," and at the date of the devisee they had two children, as here at the date of the will one of Foltz's daughters had two children, and at the date of his death all three had. 2 Jarman, side p. 1239 says: "It had been hitherto treated as an undeniable position, that in the devises under consideration, children, if there be any, will take jointly with their parents by purchase; and such certainty is the resolution in *Wild's Case*, as reported in Coke, who lays it down, 'If a man devise land to A *and to his children, or issue,* and *they* then have issues of their bodies, there his express intent may take effect according to the rule of the common law, and no manifest and certain intent appears in the will to the contrary and therefore, in such case, they shall have but a joint estate for life.' And in conformity to this doctrine seems to be the case of *Oates D. Hatterly* v. *Jackson,* where a testator devised to his wife J. for her life, and after her decease to his daughter B. *and her children* on her body begotten or to be begotten by W. her husband *and their heirs* forever. B. had one child at the date of the will, and afterwards others; and it was held that she took jointly with them an estate in fee, and consequently that on their deaths (which had happened) she became entitled to the entirety in fee. This, it will be ob-

served, was the case of a devise in fee. In *Wild's Case*
a fee was denied, and a life estate was held for want of the
word heirs.

Now it would be a fee simple, not because it would be a
fee tail converted into fee simple, but because it is a direct
devise to A. and children, they taking by purchase, and tak-
ing a fee, though there be no word heirs, by reason of Code,
chapter 71, section 8, saying that any conveyance or devise
to a person without limitation shall pass a fee simple, thus
dispensing with the word heirs or other word of limitation.
Therefore, I think *Wild's Case* and *Oates' Case* deny a fee to
Foltz's daughters. Other English cases could be cited. The
syllabus in *Graham* v. *Graham*, 4 W. Va. 320, reads thus:
"A clause in a will, among others, reads as follows: 'I give
unto my daughter *Rebeckah* Graham and her children, that
plantation where she now lives, known by the name of
Stephenson's cabin. Also, I give unto her and her children,
my negro girl named Dinah, the land and negro never to be
disposed of out of the family, nor the increase of the negro
if she has any.' Another and subsequent clause reads as fol-
lows: 'all the before mentioned *legasies* thus bequeathed to my
children, I give unto them and their heirs forever, according
to the way they are stated.' *Held*: That the devise to Re-
becca was an estate tail, and by operation of the statute was
converted into an estate in fee." The case was decided by
two Judges only, Judge Maxwell dissenting, holding that
the will conferred a joint fee upon Rebecca Graham and her
children, which I think the correct opinion. In that case
the will expressed an intent to tie up the property in the
family, thus looking like an estate tail; but I do not think that
was strong enough to do so. However, that will contained
that expression, evincing intent to make an estate tail. If
that expression had not been in the will, the decision would
have been different. In Foltz's will there is no such expres-
sion, no word to indicate intent outside the words of the
devise, a direct one to the three daughters and their children.
So the *Graham Case* does not give the daughters a fee, though
on first impression it might seem to do so. On first view it
might seem that *Merryman* v. *Merryman*, 5 Munf. 440,
would sustain the claim of Mrs. Grapes to a fee. It was a
bequest of slaves to a married woman, "to her and her chil-

dren forever." *Held*, that the mother took a fee to herself alone. The court said: "The court is of opinion, that, although a devise to a married woman, '*and her children, and their heirs*,' will give a joint estate of inheritance to her and such of her children as are living at the time, and although the term '*children*' is not to be taken as synonymous with *issue*, except to effectuate the manifest intention of the Testator; and said term is so to be taken in this case; it not being intended to denote the devisee or devisees, who were to take, nor to reduce the portion of the interest of the mother in and to the slaves, before given to her by the same clause, but to declare the duration of her interest therein to be to her and her and her children forever; that is to say, to her and her issue." This opinion, notice, admits a joint estate in mother and children as a rule, but holds that the word children was not, in that case, a word of purchase, but of limitation, and therefore was like a simple deed to John Doe and his heirs, carrying a fee to Doe. Perhaps there was something in the case not in the report inducing such opinion. It is a poor opinion. I do not see but the conclusion was contrary to Judge Roan's admission in the opening of his opinion, for the word "children" is a word of purchase except where the intent is plain to make it a word of limitation. *Moon* v. *Stone*, 19 Grat. 130; 13 Cyc. 662; 5 Am. & Eng. Ency. L. (2d Ed.) 1092. In this case we have a direct devise to three daughters and their children; no word at all to hint that the word "children" has any other meaning than the technical import imputed to it by law, and "technical words must be construed to have their proper meaning, unless it appears from the will that the testator used them in a different sense." *Hinton* v. *Milburn*, 23 W. Va. 166. As JUDGE POFFENBARGER says in *Martin* v. *Martin*, 52 W. Va. p. 387, the word is *prima facie* one "of purchase, vesting a new estate in those persons, not of limitation, ineffectual to vest an estate, but effectual to mark the limits of the ancestor's estate." So says *Ball* v. *Payne*, 6 Rand, 73. As JUDGE POFFENBARGER also says in the *Martin Case*, just cited, p. 391, where an estate is conveyed by one part of a will it cannot be cut down by raising a mist or doubt from another part. *Gaskins* v. *Hunton*, 92 Va. 528. Clear expression cannot be controlled by guess. But, in fact, in this case there are no other words

to take from the children an interest plainly conferred by the straight devise to them as well as their mothers by the use of the technical word "children." It is to the daughters "and their children;" to the children as well as to the daughters, to the daughters as well as to the children; to all alike. Such are the words. We must go outside the words to change it. When by such language, under *Wild's Case*, of authority for more than three centuries, and other authority plentiful following it, an estate has been conferred by the word "children" in its legal import, upon what theory can we destroy that estate by groping outside the will to surmise—that is all —another meaning for that word, as we must give it a meaning, and the law tells us what meaning? The mothers and children take a joint fee. In *Fitzpatrick* v. *Fitzpatrick*, 100 Va. 552, it was held that "a devise to a wife and children, without more, vests a joint estate in wife and children in equal portions." *Wild's Case* is there cited to prove that a devise to parents and children, living, the children will take jointly with the parent by purchase. It holds *Wild's Case* as law in Virginia. In *Nickell* v. *Handley*, 10 Grat. 344, Judge Moncure asserts that case as ruled by *Wild's Case*, and calls it undeniable authority. *Vaughan* v. *Vaughan*, 97 Va. 322, held a devise a fee in the mother; but it was admitted that a devise to wife and children, without more, vests a joint estate. Such is the admission also in *Lindsey* v. *Eckels*, 99 Va. 668. There are numerous cases from which it might be hastily concluded that a devise to one and his children gives a fee to the devisee, nothing to the children. This line of cases goes back as far as *Wallace* v. *Dold*, 9 Leigh 258. The Virginia cases are collected in *Stace* v. *Bumgarner*, 89 Va. 418. They do not apply in this case. In them there were not, as in this case, simple devises to a named devisee and children without more, but there was something besides to justify an intent of a fee to the individual alone, as in our case of *Wilmoth* v. *Wilmoth*, 34 W. Va. 426, a bequest to a wife "to be hers absolutely to be used by her in any way or manner she may wish for her own comfort and the comfort of our two children." Here was a bequest to her alone. The mention of the children only spoke the motive of the gift to the wife, not a bequest to the children. In most of them the devise was sole

to a named person, who took the vested estate and the words did not, as here, make the child devisee taking an actual estate.    This is the view of these cases taken in the *Fitzpatrick Case*, 100 Va. 552, it being held that to vest a fee in the parent there must be more than a devise to parent and children.

Whilst, as shown above, *Wild's Case* is fixed law, yet some authorities hold that a deed to one and his children vests in the parent a life estate, with remainder to children.    13 Cyc. 662.    But other cases there cited hold it a joint estate. The weight of authority sustains *Wild's Case.*

·At the date of the will one of the three daughters of Foltz had two children, and one was born after his death.    At his death all three had children.    If the date of the will is the time when we are to see what children the daughters had, still it would come under the rule of *Wild's Case*, though only one daughter then had children.    I do not see that the one and her children could take a joint estate, the others a fee. Can the devise be so cut up?    I think that the daughters then childless would take, and their estates open to vest shares in their children upon birth.    Perhaps *Vansant* v. *Morris*, 29 Ala. 293, may support this view.    But this question is not material, because the point of time at which we inquire whether the daughters had children is the testator's death. That is the date at which we consider the situation in this matter.    *Wild's Case* does fix this point of time at the date of the will.    Jarman, 1237, says this is wrong, and that the testator's death is the test time.    A man intends to keep his property until death.    But this matter is settled by Code, chapter 70, section 10, saying that "a will shall be construed, with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testater, unless a contrary intention shall appear by the will."    *Kain* v. *Carney*, 40 W. Va. ·758, point 11.    So, we cannot find a fee in Mrs. Grapes. I have struggled to come to a different conclusion.    Whilst I am fixed in opinion, after patient effort to hold differently, yet I am morally, though not legally, satisfied that Foltz, a plain unlettered man, not a lawyer, a former drawing the will with his own hand, without counsel, never intended to give the children of his daughters shares with their mothers.

He thought it either would confer on his daughters a fee or a life estate. He did not intend to give the children of one daughter twice as much as the children of another because one had four children, the other two. But there are plain words. "In the interpretation of wills the true inquiry is not what the testator *meant* to express, but what do the words used express." *Pack* v. *Shanklin*, 43 W. Va. 304. As above stated where an estate is conferred by plain words in one part of a will, it cannot be devested by another doubtful clause. "It is not sufficient to create a doubt from other terms in another part of the instrument.—Possibilities and even probabilities will not avail. If the benefit is to be taken away it must be by express words or necessary implication." *Barksdale* v. *White*, 28 Grat. 224. But there is no other qualifying clause in the will.

But the appellant's counsel contends that even if the daughters and their children took joint estates, they should take *per stirpes*, not *per capita*. She claims that one daughter's children cannot take more than those of another merely because one has more than another. They would if the mothers took thirds. This will uses the word "children," a word of purchase, making mothers and children joint purchasers, each taking an equal undivided share, mothers and children, When a deed is made to a dozen grantees they take equally, that is, *per capita*. What is in this will to make this case different? If the will had given to the daughters and their "heirs," it would be different under *Ross* v. *Kiger*. 42 W. Va. 402. But the word children is used, and they take *per capita*. *Collins* v. *Feather*, 52 W. Va. 107, 110. The devise is to individuals, not a class. *Kent* v. *Kent*, 55 S. E. 564.

These principles compel us to affirm the decree.

*Affirmed.*